## EZRA GODDARD *vs.* LEVI DAKIN & another.

A., in 1789, made a deed conveying land to B., on condition that B. and his heirs should permit C. and his heirs to possess and enjoy said land during the life of A., and on the further condition that B., his heirs and assigns, should not divert the water from a spring on the land conveyed, so as to injure the land of C., but should suffer the water to pass off in its natural course ; and that *B. should also, if C. or his heirs should so incline, have the right to enter on said land,* and convey the water, in logs, for the use of C.'s house and barn : C. and his assigns, the last of whom was G., enjoyed the right, for thirty five years or more, of carrying the water from the spring in logs, agreeably to said deed : In 1840. the land so conveyed to B. by A. was conveyed to D., " subject to G.'s right to convey water from the spring across said land :" D. afterwards obstructed the flow of the water, in logs, to G.'s house and barn, and G. brought an action against him to recover damages for the obstruction. *Held,* that by the true construction of A.'s deed to B., in connection with the long use of the water by C. and his assigns, A. intended to give a right to C to enter upon the land, after A.'s decease, and to conduct the water, in logs, for the use of his house and barn. *Held also,* that D. was precluded, by the deed made to him in 1840, from questioning G.'s right so to convey the water from the spring ; and that G. was entitled to maintain his action.

TRESPASS upon the case for obstructing the flow of water, in logs, from a spring in the land of Dakin, one of the defendants, across his land, to the plaintiff's house and barn.

At the trial before *Wilde,* J. the defendants admitted that on the 19th of August 1844, for the purpose of trying the rights of the parties, they took up, on the land of said Dakin, the first two logs leading from the spring, and thereby stopped the flowing of the water to the plaintiff's house and barn.

The plaintiff, to support his claim, introduced the deed of Benjamin Whitney to Elizabeth Whitney, dated September 28th 1789, and the deed of Elisha Smith to said Dakin, dated October 7th 1840.

The deed first above mentioned, from Benjamin to Elizabeth Whitney, conveyed six acres, more or less, of land in Worcester, bounded in part on land of Elisha Smith, and contained, after the habendum clause and the usual covenants, the following words : " Always provided, and this deed is on condition, any thing aforesaid to the contrary notwithstanding, that the said Elizabeth Whitney, her heirs and assigns, shall suffer and permit my son, Benjamin Whitney, jr. and his heirs, to improve, use, occupy, possess and enjoy the aforedescribed land, and to take the profits of the same

to his and their own use and benefit, during my natural
life; he not to take any wood from the said land, excepting
for necessary fencing the same; and on this further condition,
that the said Elizabeth Whitney, her heirs or assigns, shall
not divert the waters issuing from a certain spring on the
premises aforesaid, so as to injure the lands of the said Benja-
min Whitney, jr. but shall suffer the said waters to pass off in
their natural course; and that *the said Elizabeth shall, if the
said Benjamin Whitney, or his heirs shall so incline,* have
the right to enter upon the premises aforesaid, and convey the
waters, so issuing from the said spring, in logs, for the use of
the said Benjamin's house and barn. Now, if the said Eliza-
beth shall suffer the said Benjamin Whitney, jr. to improve the
estate in the manner aforesaid, and shall do and perform the
condition aforesaid, according to the true intent and meaning
of this instrument, then this deed is to be in full force; other-
wise, the same is to be void and of no effect."

The deed last above mentioned, from Elisha Smith to said
Dakin, conveyed two tracts of land in Worcester, one of six
acres, more or less, and another of six acres and half an acre,
more or less, with this clause: " But the premises are hereby
conveyed subject to Ezra Goddard's right to convey water
from the spring, across the first above described tract of land."

It was admitted that the land, in which said spring is, was
conveyed by the first, and is held by said Dakin under the
second, of said deeds; and that the land occupied by the plain-
tiff is the same that is mentioned, in the first of said deeds, as
belonging to Benjamin Whitney, jr.

Walter H. Davis, a witness called by the plaintiff, testified
that he owned and occupied said Dakin's land from 1829 to
1840, and that, in the spring of 1829, the plaintiff went into
possession of the land he now owns; that the water then ran
from the spring in an open ditch; that in two or three years
afterwards, the plaintiff claimed of the witness the right to
take the water from the spring by logs laid in the ground; and
that the witness, under that claim, and not knowing but that
the plaintiff had such right, consented that he should lay

down his logs whereby to take the water from the spring; and that the witness, under the belief that the plaintiff had the right to take the water, consented that the plaintiff should change the course of the logs, so as to carry the water to his barn, as well as to his house; that the plaintiff, in digging to lay down his logs, dug up old bored logs, which lay in the direction from said spring to his house. On cross-examination, this witness testified that the man, of whom he bought the land now owned by said Dakin, told him that the plaintiff, or the plaintiff's land, had a right to the spring; that, more than twenty years ago, he saw water run out of an old penstock in the house where the plaintiff lives; that he did not know where the water came from, but knew no other place besides the spring from which the water could come.

The plaintiff also called Elisha Smith as a witness, who testified that he owned the land now Dakin's, from 1840 to 1841, and that, during that year, the water ran from the spring in logs.

Jason Bigelow, called by the plaintiff, testified that he went to live on the Goddard place in 1810, and lived there with Benjamin Whitney, jr. thirteen or fourteen years; that when he went there, the water ran from the spring, in logs, directly to said Whitney's house; that about the year 1812, the logs became rotten and leaked at or near the house; that the penstock at the house was then given up, and one put into the logs where they entered said Whitney's land, about six rods from the house; that in a year or two afterwards the water stopped running in the logs; that while the water came into the house, it was the practice of said Whitney's family to stop the penstock, and prevent the water from running when it was not wanted for use; that after the logs failed, the water ran on the top of the ground, through Dakin's land and was then taken into troughs, on the top of the ground, and continued to run so while he resided there; that about twenty years ago, while the water was running on the top of the ground, the spring was cleared and stoned up by one Daniels (who then owned Dakin's place) and said Benjamin Whitney, jr. by their mutual consent and labor.

Ezra B. Goddard, son of the plaintiff, testified that in August 1844, the water ran in logs ; that it was low, and that the plaintiff used to draw it all off from the spring.   On cross-examination, he testified that Dakin had complained to the plaintiff about his so drawing off the water.

The defendants called Asa Pond as a witness, who testified that he lived in the Whitney house from December 1st 1825, to April 1826, and that the water then ran from the spring in troughs, on the top of the ground, to the Whitney land, but not to the house or barn ; and that the water for the family in that house was then taken from a well.

Here the defendants contended that said deed of Benjamin Whitney to Elizabeth Whitney did not give Benjamin Whitney, jr. any right to the spring, or to take the water therefrom ; and they proposed to show that the plaintiff, and those under whom he claimed, had acquired no right to take the water and carry it to his house and barn, so as to deprive said Dakin of the use of it.   They further contended, that if Benjamin Whitney, jr., or those claiming under him, ever had acquired any right to carry the water to said house, it was only for necessary family use, keeping all the water stopped back, except what was thus necessary, and that the plaintiff had no right to use the water in any way, except as he might have acquired it by use.   And they further proposed to show that, if any right had been acquired by said Whitney to carry the water, in logs, to his house, it had been abandoned and relinquished by him, or by those claiming under him.   But the judge ruled, that the said deed to Elizabeth Whitney gave to said Benjamin Whitney, jr. the right to carry the water from the spring, in logs, to his own house and barn, and to any extent that he might find convenient ; and that the deed of said Smith to said Dakin, and said Dakin's holding said premises under it, estopped him from denying the plaintiff's right to take and carry the water from said spring, as he did take and carry it at the time of the making of said deed Whereupon the defendants submitted to a default, subject to the opinion of the whole court upon said rulings.

Judgment to be entered for the plaintiff for damages agreed by the parties, if the said rulings were correct; otherwise, a new trial to be granted.

*Newton*, for the defendants.

*B. F. Thomas & J. C. B. Davis*, for the plaintiff.

HUBBARD, J. By the direction given to this case at *nisi prius*, the decision of the cause depends mainly upon the construction to be given to the deed of Benjamin Whitney to Elizabeth Whitney, introduced by the plaintiff. The deed is confused as to a part of its provisions, and it is not easy to reconcile one part with another, if we give a literal meaning to every clause. But though confused, the deed itself is not insensible ; and by comparing its several parts, and construing the whole together, we think the intention of the grantor may be ascertained with sufficient clearness to enable us to give the true construction to it. The apparent confusion and inconsistency in a deed sometimes arise from a want of that knowledge of the existing state of things at the time of making it, which made it intelligible to the parties; and sometimes they arise from a mistake of the scrivener in accidentally repeating or omitting words or sentences, by which the sense is affected.

The counsel for the defendants argues that the reservation in respect to the water is at the election of Elizabeth, and not at that of the grantor, and his son who is named in the deed ; that by the first condition in the deed, she being excluded from the possession of the land during the life time of her father, the grantor, the second condition was intended to give her the right, during his life, to take the water to the house of the father, which, as she was not in possession, she could not do without this provision. This construction, we think, is forced and unnatural ; and to give it the appearance of probability, facts are assumed in regard to the respective estates of the father and the son, and the residence of the daughter, which are not in proof. And even if it be admitted that the daughter was living with the father at the time of making the deed, yet, if he inclined to bring the water to his own house, why should he not reserve the right to himself

instead of giving it to the daughter? She does not appear to have had any interest in the estate thus to be benefitted, nor does it appear that the father contemplated to give her any such interest. We are of opinion, that if this clause is to be considered as a right intended to be granted to Elizabeth, to divert the water from the estate of her brother, at her own pleasure, it is repugnant to the former part of the deed, by which she is enjoined not so to divert the water, and is to be rejected for its repugnancy. But we incline to the construction given by the plaintiff's counsel, that it was the grantor's intention to impose another condition in the deed, namely, to give the son a right, after Elizabeth came into possession of the estate, to enter upon the premises and to conduct the water, in logs, for the use of his house and barn ; a use which might require a diversion of the stream from its natural course. This construction was given at the trial by the presiding judge, and is now confirmed by further consideration of the deed. There was probably a mistake of the scrivener in drafting the clause. This construction, however, not only harmonizes with other parts of the deed, but corresponds with the use which has been made of the water, so far as that use is shown by the evidence at the trial; and what the parties do under a deed is often the best evidence of its true construction.

It has, however, been further contended that, this being a condition in favor of a third party, he is a stranger to the deed, and cannot take advantage of any breach of it, as none but the grantor and his heirs can enter for condition broken.

The deed, though inartificially drawn, was evidently intended by the grantor to make a provision for the daughter and the son, both during his life and after his decease ; and for the benefit of his estate, he intended the son should have the use of the water flowing from a spring in the land given to the daughter. If this were now an attempt on the part of the son, or those claiming under him, for the first time to enforce the rights intended to be secured by the deed to the son — supposing it not to be lost by *non user*, nor defeated

by any statute bar — technical difficulties, which have been suggested in the argument, might arise in the way of enforcing it, as being a condition or reservation in a deed, which strangers to it could not legally avail themselves of. But such is not the aspect of the present case. On the contrary, it appears by the testimony that, so early as the year 1810, the said Benjamin Whitney, jr. the son, was living on the place now owned by the plaintiff, and was in the actual enjoyment of the water of the spring, at his house, either by means of logs or troughs, and continued so to enjoy it during the time the witness resided with him, a period of thirteen or fourteen years; that he cleared out and stoned up the spring, jointly with the owner of the defendant's place, as late as the year 1828; and that, about the year 1832, he laid down logs, near old bored logs, carrying the water to his barn, as well as to his house, with the knowledge and consent of Davis, who then owned Dakin's place, and who continued to own it till 1840. And it was further proved by Elisha Smith, who succeeded to Davis, and who is Dakin's grantor, that the plaintiff continued so to use it while Smith owned the estate.

The facts, then, establish an enjoyment of the grant by the son and those claiming under him, agreeably to the provisions of the father's deed, for thirty five years, at least, prior to the injury complained of; and we are of opinion that the grantees of Elizabeth Whitney are now estopped from denying the right of Benjamin Whitney, jr. and those claiming under him, to enjoy the waters of the spring in the manner provided for in that deed, according to the practical construction given to it. And whatever difficulties might have arisen in enforcing the claim of Benjamin Whitney, jr. if it had been originally resisted, those difficulties are removed by the continued enjoyment of the right granted or intended to be granted. And we are of opinion, further, that the defendant is also precluded from questioning this right, by the terms of his deed, which declares that the premises are conveyed to him "subject to Ezra Goddard's right to convey water from the spring across" the said land; the plaintiff being, at the time of the grant, in the enjoyment of it.

We do not here mean to say that the defendant may not show the extent of the right, or any collateral matter that would go to extinguish it; but that he shall not be permitted, against his own deed, to deny the existence of the right.

The evidence introduced by the parties shows the plaintiff's enjoyment of the spring to be agreeably to the provisions of the deed under which the defendant Dakin claims, and to the reservation in his own deed; and it is agreed that the plaintiff is the owner of the land formerly belonging to Benjamin Whitney, jr.

Judgment is therefore to be entered for the plaintiff for the damages agreed upon by the parties.